DECISION
This complaint seeks judicial review pursuant to G.L. 1956(1998 Reenactment) § 42-35-15 of a final order of the defendant Contractors' Registration Board ("the Board"). The defendant Shoreline Properties, Inc. ("Shoreline") is a registered contractor, which built a house for the plaintiff in 1997. On August 7, 1998, the plaintiff filed a claim with the Board alleging that Shoreline's work was negligent or improper in a number of respects. In accordance with G.L. § 5-65-20 the claim was heard on October 21, 1998 by a hearing officer assigned by the executive director of the Board. The hearing officer received and considered evidence and argument from the plaintiff and a representative of Shoreline. On October 28, 1998 the hearing officer published findings of fact, conclusions of law and a proposed order, based on those findings.
The hearing officer concluded as a matter of fact that the cracks in the basement in the plaintiffs home were caused by negligent or improper work performed by Shoreline under standards promulgated by the Board. He also concluded that a ceramic tile floor installed by Shoreline was negligent or improper under standards promulgated by the Board. He proposed that Shoreline pay the plaintiff $6,386 for tile replacement and that Shoreline repair the slab cracks in the basement within forty-five (45) days.
Both parties exercised their respective right of appeal from the hearing officer's decision pursuant to G.L. § 5-65-20 (b)
by filing written exceptions with the Board. The Board heard the parties on December 10, 1998 and issued its final order on December 17, 1998. The Board adopted all of the findings and conclusions of the hearing officer verbatim. It, nevertheless, modified the proposed order by allowing Shoreline to replace only 12 defective or damaged ceramic tiles with tiles selected by the plaintiff. The Board then further concluded that the hearing officer improperly ordered Shoreline to repair the cracks in the plaintiffs basement, since the cracks did not violate the Board's standard. Accordingly, it did not order Shoreline to repair the plaintiffs basement.
There was obviously conflicting evidence on all of the fact issues before the hearing officer and the Board on appeal. There is no need to cite authority for the proposition that this Court cannot substitute its view of the evidence for that of the Board.G.L. § 42-35-15 (g). The question presented is, rather: What was the proper scope of the Board's appellate review of the decision of its hearing officer under § 5-65-20(b)?
Clearly, under that section the Board has the power to reverse the decision of its hearing officer, let alone modify it. Otherwise, the concept of appeal articulated in the statute is bereft of meaningfulness. By regulation, the Board has limited the scope of its appellate review. While it hears argument from the parties, it does not receive or consider any new or additional evidence to that submitted to the hearing officer. Otherwise, it plainly feels it is free to accept or reject the hearing officer's conclusions.
The best example of the opposing findings of fact pertain to the cracks in the concrete in the plaintiffs basement. Both fact-finders agree that there are such cracks. Both fact-finders agree that under the Board's standards, cracks more than 1/4" wide or 1/4" in vertical displacement are a deficiency. They disagree as to whether or not there are any such cracks exceeding those dimensions. The Board claimed to rely on the report of its investigator, dated August 27, 1998, in which he says that: "These are hairline and are common, not considered deficient." The Court will infer that the hair to which the investigator refers is much less than inch wide. The hearing officer relied on the plaintiffs testimony and video evidence of the work in question. Based on the findings articulated in the final order, so apparently did the Board.
With respect to the ceramic floor tiles, a slightly different scenario displays the opposition between the hearing officer and the Board. Both agree that the installation of the tiles was negligent or improper work. Both agree that the installation has affected at least 12 tiles. They disagree as to how the contractor should be required to remedy its defective work. The hearing officer accepted the plaintiffs evidence that all of the floor tiles must be removed and reinstalled at a cost of $6,386. The defendant, once again accepting the conclusions of its investigator, has determined that replacement of 12 defective tiles will fully remedy the improper or negligent work.
Section 5-65-20 obviously creates a two-tiered system for administrative hearings of contested matters within the Board's jurisdiction. That system so closely resembles that provided by§ 42-17.7-6 for administrative hearings in the Department of Environmental Management that all parties have citedEnvironmental Scientific Corporation v. Durfee, 621 A.2d 200 (R.I. 1993) for the standard of review by an administrative appellate body on appeal from a decision of a hearing officer.
The Supreme Court first decided in that case that the scope of internal appellate review depended on the "presence of credibility determinations" at the hearing level. 621 A.2d at 206.
The Court then proceeded to describe the function of administrative appeal in a two-tiered system as like a funnel:
 "In contrast, the Legislature has created a funnel-like system for evaluating wetlands-related, collective-action problems. Sitting as if at the mouth of the funnel, a hearing officer hears testimonial and documentary evidence from all affected parties: the applicant, the department, and interested members of the public. Just as the funnel narrows, the hearing officer analyzes the evidence, opinions, and concerns of which he or she has been made aware and issues a decision. At the discharge end of the funnel, the DEM director reviews the hearing officer's findings and issues a final decision. Because the director sits at the narrowest point of the funnel, he or she is not privileged personally to hear or witness the broad spectrum of information that entered the widest end of the funnel. Therefore, the further away from the mouth of the funnel that an administrative official is when he or she evaluates the adjudicative process, the more deference should be owed to the factfinder." (Emphasis supplied). 621 A.2d at 207-08.
In addition, based on § 42-17.7-6 the Court also ruled that an appellate decision rejecting a hearing officer's findings must be grounded upon an adequate rationale. 621 A.2d at 208. Although § 5-65-20 does not contain any such express provision, the Board cannot seriously claim that it can reject a hearing officer's findings without an adequate rationale. Furthermore, unless that rationale is either obvious or clearly expressed, a court on judicial review cannot determine whether or not the rejection has a rational basis.
The Court concluded with regard to the judicial review of any agency decision, in which an internal appellate body has rejected the findings of a hearing officer:
 "In the past we have put forth a stringent test of substantial evidence pursuant to our review of administrative decisions. When an administrative agency both hears evidence and issues a final decision, we have held that a reviewing court should "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). See Sartor, 542 A.2d at 1083. In contrast, the matter before us is the product of a two-tiered agency review. The APA requires us to search the record for substantial evidence. Yet in our inquiry we cannot overlook the body of law that elevates the factfinder's role when credibility is in issue. In light of our discussion the equation we use to determine whether substantial evidence exists factors in both credibility determinations and the corresponding deference to the hearing officer's findings."
(Emphasis supplied). 621 A.2d at 209.
In this case both issues, the defective ceramic tiles and the cracks in the concrete, were the subject of credibility disputes. As to each, the hearing officer chose to believe the plaintiffs evidence and to reject the opinion of the investigator, as to both liability and remedy. I have read with great care the learned rescript decision of my brother, Williams, J., inSchotcrete Systems International, Inc. v. Contractors'Registration Board, C.A. No. WC 94-0569, August 6, 1997. In that case, the Board also had accepted its hearing officer's findings of fact that both parties before the Board were responsible for construction delays. The hearing officer had ordered a form of specific performance relief by ordering the contractor to proceed to complete the project for the originally stipulated price. The Board, however, modified the proposed order by requiring that, instead of proceeding to complete the work, the contractor reimburse the complainant for their down payment, less certain costs incurred by the contractor. Put another way, the contract was rescinded and the complainant was awarded restitution. Because both parties were equally to blame for the contractor's failure to proceed to work in a timely fashion, the Board allowed the contractor to have a credit for only half the expenditures it made, which it estimated to be $1,000.
While one might well agree that the Board in the Shotcrete
case did in fact defer to the hearing officer's findings and legal conclusions, and that it was not bound to accept the-form of relief he proposed to order to remedy the injury he found, the Board did not withhold all effective remedies from the parties entitled to relief.
In this case, it is not the form of relief that is in dispute. It is rather, in one case, the extent of relief or amount of damages, to which the complainant is entitled, which must be measured by the extent of the injury, and, in the other instance, whether the complainant is entitled to any relief at all. By denying the complainant reimbursement for the full costs of replacing the ceramic tile flooring entirely, in effect, the Board is rejecting the conclusion of the hearing officer that the contractor's negligent or improper work injured the entire floor. The only basis for denying damages to the plaintiff for the injury to the entire floor must have been an independent resolution by the Board of a credibility dispute between the complainant and her evidence, on the one hand, and the investigator and his report on the other. The plaintiff alleged that the investigator showed bias against her and her claim. The hearing officer chose to accord the investigator's report no evidentiary weight. That decision could well be a signal that the evidentiary value of the investigator's report was seriously impeached by the plaintiffs evidence of bias. The hearing officer, after all, heard live testimony. Bias can sometimes be detected only by a sensitive observation of demeanor evidence. The Board chose to give credibility to evidence which the hearing officer chose to reject as incredible. By denying the complainant any relief for the defective concrete work, in effect, the Board utterly, and without any explanation whatever, rejected the hearing officer's finding that the cracks were signs of defective work. The Board clearly made credibility determinations in this instance from conflicting evidence without any deference at all to its hearing officer's findings.
For the Board mechanically to parrot the hearing officer's findings and conclusions, and then to resolve the dispute, as if the findings were otherwise, is at best disingenuous, and., at worst most serious. Since the Board failed in fact to defer to the findings of the hearing officer, there was no evidence in the record before it, except evidence obviously rejected by the hearing officer as incredible, on which the Board's form of final order could be based, that order must be vacated and set aside.
Section 42-35-15 (g) permits this Court to "reverse or modify" the agency's decision, provided it does not "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Ordinarily, the relief this Court would grant in a case like this would be to remand this matter to the Board for a new hearing in order to allow the Board to accord the findings of the hearing officer the full deference to which they are, in fact and not merely formalistically, entitled. Since the conclusions of the hearing officer are plainly supported by substantial evidence in the record, the final order of the Board will be modified into the form proposed by the hearing officer on October 28, 1998.
The plaintiff will submit a form of judgment incorporating the proposed order of October 28, 1998 as the modified final order of the Board, on notice to the defendants.